FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

ROBERT G. DREHER, Acting Assistant
Attorney General
SETH M. BARSKY, Chief
KRISTEN L. GUSTAFSON, Assistant Chief
RICKEY D. TURNER Jr., Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
999 18th Street, Suite 370 - South Terrace
Denver, CO 80202
Ph: (303) 844-1373

Attorneys for Federal Defendants

## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF HAWAII

| | |
|---|---|
| KAHEA and FOOD & WATER WATCH, INC., | CASE NO. 1:11-cv-474-SOM-KSC |
| Plaintiffs, | **FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE RENEWED MOTION FOR SUMMARY JUDGMENT [ECF No. 63]** |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE; MICHAEL D. TOSATTO, in his official capacity as Regional Administrator of the National Marine Fisheries Service, Pacific Islands Regional Office; ERIC C. SCHWAAB, in his official capacity as Assistant Administrator of the National Marine Fisheries Service; and GARY LOCKE, in his official capacity as Secretary of Commerce, | **Magistrate Judge: Hon. Kevin S. Chang** |
| Defendants. | |

# **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 1

   A. Litigation history ........................................................................................ 2

   B. The 2013 permit ......................................................................................... 3

ARGUMENT ........................................................................................................ 4

   I.   Plaintiffs' motion for leave should be denied because Plaintiffs
      have not shown good cause for modifying the scheduling order
      for summary judgment motions to allow Plaintiffs to file a fourth
      motion for summary judgment. ................................................................ 4

   II.  Plaintiffs' motion for leave should be denied because the Court
      already addressed Plaintiffs' arguments regarding the effect of
      the 2011 permit and remedy briefing is premature ...................................... 6

   III. Plaintiffs seek to file a renewed motion based on material outside
      the administrative record in this litigation. ................................................. 8

CONCLUSION .................................................................................................. 17

1

## TABLE OF AUTHORITIES

2

<u>CASES</u>                                                                                                          <u>PAGE</u>

Afghan Am. Army Servs. Corp. v. United States,
    106 Fed. Cl. 714 (Fed. Cl. 2012) ..........................................................................12

Asarco, Inc. v. EPA,
    616 F.2d 1153 (9th Cir. 1980) ..............................................................................16

Association of Pacific Fisheries v. EPA,
    615 F.2d 794 (9th Cir. 1980) ................................................................................15

Bark v. Northrop,
    2014 WL 715603 (D. Or. Feb. 23, 2014) .............................................................14

California v. Block,
    690 F.2d 753 (9th Cir. 1982) ................................................................................13

Camp v. Pitts, 411 U.S. 138 (1973)...................................................................................9, 12

Ctr. Biological Diversity v. U.S. Fish & Wildlife Serv.,
    450 F.3d 930 (9th Cir. 2006) ..................................................................................9

Fence Creek Cattle Co. v. U.S. Forest Serv.,
    602 F.3d 1125 (9th Cir. 2010) .........................................................................14, 15

Ho-Chuan Chen v. Dougherty,
    2007 WL 1461205 (W.D. Wash. May 16, 2007) ...................................................5

Hoffman v. Tonnemacher,
    593 F.3d 908 (9th Cir. 2010) ................................................................................16

Johnson v. Mammoth Recreations, Inc.,
    975 F.2d 604 (9th Cir. 1992) ..................................................................................6

Jones v. National Marine Fisheries Service,
    741 F.3d 989 (9th Cir. 2013) ................................................................................13

Kappos v. Hyatt, 132 S. Ct. 1690 (2012) ...............................................................................15

Klamath Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.,
    2014 WL 525116 (D. Or. Feb. 6, 2014) ...............................................................11

Kleppe v. Sierra Club,
    427 U.S. 390 (2001) ................................................................................13

Monsanto v. Geertson Seed Farms,
    561 U.S.139 (2010) ..................................................................................8

Native Ecosystems Council v. U.S. Forest Serv.,
    428 F.3d 1233 (9th Cir. 2005) ...................................................................9

Native Ecoystems Council v. Dombeck,
    304 F.3d 886 (9th Cir. 2002) .....................................................................7

Navajo Nation v. United States Forest Serv.,
    535 F.3d 1058 (9th Cir. 2008) (en banc) .................................................10

Presidio Golf Club v. Nat'l Park Service,
    155 F.3d 1153 (9th Cir. 1998) ...................................................................7

Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.
    v. U.S. Dep't of Agric.,
    499 F.3d 1108 (9th Cir. 2007) ..............................................................9, 12

Rybachek v. EPA,
    904 F.2d 1276 (9th Cir. 1990) .................................................................15

San Joaquin River Group Authority v. NMFS,
    819 F. Supp. 2d 1077 (E.D. Cal. 2011) ...................................................15

Southwest Center for Biological Diversity v U.S. Forest Service,
    100 F.3d 1443 (9th Cir. 1996) .................................................................11

Tri-Valley CARES v. U.S. Dept. Energy,
    671 F.3d 1113 (9th Cir 2012) .............................................................11, 12

Wasco Prods., Inc. v. Southwall Techs., Inc.,
    435 F.3d 989 (9th Cir. 2006) ...................................................................10

1

## FEDERAL REGULATIONS

2

3

40 C.F.R. § 1508.7 ......................................................................................... 13

4

50 C.F.R. § 665.221 .......................................................................................... 1

5

50 C.F.R. § 665.224 ................................................................................... 1, 3, 8

6

50 C.F.R. § 665.227 .......................................................................................... 1

7

8

78 Fed. Reg. 49,258 .......................................................................................... 4

9

78 Fed. Reg. 49,259 .......................................................................................... 4

10

78 Fed. Reg. 66,683 .......................................................................................... 4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF ACRONYMS

AR – Administrative Record

Council – Western Pacific Fishery Management Council

CRE MUS – Coral Reef Ecosystem Management Unit Species

EA – Environmental Assessment

FEP – Hawaii Archipelagic Fishery Ecosystem Plan

FMP – Fishery Management Plan

FONSI – Finding of No Significant Impact

KBWF – Kona Blue Water Farms

MSA – Magnuson-Stevens Fishery Conservation and Management Act

MUS – Management Unit Species

NEPA – National Environmental Policy Act

NMFS – National Marine Fisheries Service

NOAA - National Oceanic and Atmospheric Administration

SCREFP – Special Coral Reef Ecosystem Fishing Permit

Secretary – Secretary of Commerce

## INTRODUCTION

Plaintiffs' motion for leave asks the Court for a second attempt to brief the merits of their National Environmental Policy Act ("NEPA") claim.   Plaintiffs have not shown good cause for a renewed motion for summary judgment. Moreover, because they seek to circumvent well-established rules governing review of the administrative record of the agency at the time it made the challenged decision by seeking to introduce post-decisional, extra-record material in support of their renewed motion, Plaintiffs' motion for leave should be denied. Plaintiffs' proposed renewed motion for summary judgment is impermissibly based on extra-record information regarding a 2013 permit—information that was not available and could not be anticipated at the time that the National Marine Fisheries Service ("NMFS") made its decision on the challenged 2011 Special Permit.   Rather than allowing further briefing that is both unnecessary and improper, this case should continue to the merits of Plaintiffs' NEPA claim on the basis of the arguments already briefed in the parties' cross motions for summary judgment.

## BACKGROUND

In 2010, Kona Blue Water Farms ("KBWF") sought to culture and harvest almaco jack which is a Coral Reef Ecosystem Management Unit Species ("CREMUS"), or more specifically, a potentially harvested coral reef taxa ("PHCRT"), using a CuPod, an unapproved gear type.  See 50 C.F.R. § 665.221 (identifying Seriola rivoliana by its family taxa "Carangidae"); 50 C.F.R. § 665.227 (specifying allowable gear for harvesting CREMUS); 50 C.F.R. § 665.224 (requiring special permit to harvest any PHCRT, or for using any gear not specifically approved); see also AR D at 2694, Table 5.  As such, pursuant to the Hawaii Archipelagic Fishery Ecosystem Plan ("FEP") and its implementing regulations, KBWF was required to obtain a special permit before operating.  AR A at 17.  On November 10, 2010, KBWF applied for a special permit. AR A at 68.

1   Upon review of KBWF's application, NMFS proposed to issue a limited, one-year

2   special permit.  AR A at 1.  As part of this review process, NMFS produced a draft

3   Environmental Assessment ("EA") under NEPA to determine whether the

4   proposed project would have a significant effect on the environment.  AR F at

5   4450.   After considering public comment and input from the Western Pacific

6   Fishery Management Council ("Council"), NMFS finalized the EA.  See AR A at

7   11, 49-51; AR F at 4240-42.  NMFS reasonably found the scope and intensity of

8   KBWF's proposed project, a small-scale harvest operation for a limited time

9   period, to be minimal, and that the project would therefore "not significantly

10  impact the quality of the human environment."  AR A at 10.  On July 6, 2011,

11  NMFS issued a Finding of No Significant Impact, see AR A at 3-10, and

12  subsequently issued a limited, one-year special permit to KBWF ("2011 towed

13  permit"), to expire on July 8, 2012.  See AR A at 90-98.  The permit authorized

14  KBWF to "stock, culture and harvest Seriola rivoliana, using CuPod gear . . .

15  pursuant to federal regulations found in 50 CFR §665.224."  AR A at 90.  The

16  permit was terminated on April 2, 2012, following completion of the project.

17      **A.    Litigation history**

18      On August 2, 2011, Plaintiffs Kahea and Food and Water Watch, Inc.

19  ("Plaintiffs") filed a complaint challenging the validity of the 2011 towed permit

20  issued by NMFS to KBWF pursuant to the Magnuson-Stevens Fishery

21  Conservation and Management Act ("MSA").  See Compl., ECF No. 1; 9th Cir.

22  Mem. Op. ("9th Cir. Op."), ECF No. 55 at 1.  Plaintiffs' argument before the

23  District Court was that NMFS had no authority under the MSA, the FEP, or the

24  implementing federal regulations to issue the special permit, and also that NMFS

25  engaged in improper de facto rulemaking.  See Pls.' 2nd Am. Mot. for Summ. J.

26  ("Pls.' Mot. for Summ. J."), ECF No. 29 at 12, 15-26.  Plaintiffs also claimed that

27  NMFS failed to adequately assess the environmental impacts of the 2011 towed

28  permit in violation of NEPA.  Id. at 21-27; Compl. at 26-27.  Plaintiffs' claims

1  were fully briefed by March 2012.

2      Federal Defendants were notified on March 5, 2012, near the close of

3  summary judgment briefing, that KBWF had completed its project under the 2011

4  towed permit. The following day, Federal Defendants notified the Court of this

5  suggestion of mootness.  Defs.' Reply, ECF No. 38 at 11-13.  At the Court's

6  request, the parties then briefed the issue of mootness.  See Order, ECF No. 39;

7  Supp. Briefing, ECF No. 40, 41.  Plaintiffs explained in this briefing that their

8  NEPA claim was not moot, in part, because of the "precedential effects" of past

9  agency decisions such that future permitting decisions could rely on the 2011

10  towed permit.  Pls.' Supp. Br., ECF No. 41 at 4.  The District Court entered

11  judgment for Federal Defendants on all of Plaintiffs' MSA claims and dismissed

12  the NEPA claim as moot.

13      On appeal, the Ninth Circuit affirmed the MSA and de facto rulemaking

14  holdings, but it held that the NEPA claim met an exception to the mootness

15  doctrine because it was capable of repetition yet evading review.  9th Cir. Op. at 3.

16  The Ninth Circuit remanded the case.  Id.  The Ninth Circuit did not opine on the

17  possible scope of relief should the Court find in the Plaintiffs' favor on the NEPA

18  claims, but cited Ctr. For Biological Diversity v. Lohn, which explains that after a

19  claim for injunctive relief is moot, a court may still award declaratory relief.  511

20  F.3d 960, 964 (9th Cir. 2007) ("We have held, however, that where, as here, both

21  injunctive and declaratory relief are sought but the request for injunctive relief is

22  rendered moot, the case is not moot if declaratory relief would nevertheless

23  provide meaningful relief.") (citation omitted).

**B.      The 2013 permit**

25      On December 4, 2012, almost 17 months after NMFS' decision to approve

26  the first permit, and eight months after that permit was terminated and all gear was

27  removed from the action area, KBWF submitted a complete application for a new

28  special permit for harvesting almaco jack using another unapproved gear type

under 50 C.F.R. § 665.224.  After considering public comment, on October 25, 2013, NMFS issued a Finding of No Significant Impact for a new special permit for Kampachi Farms, KBWF's successor,[1] to harvest 2,000 almaco jack using a floating pen, tethered to an anchor set in 6,000 feet of water in the Exclusive Economic Zone.  78 Fed. Reg. 49,258 (Aug. 13, 2013) (notice of availability of EA); 78 Fed. Reg. 66,683 (Nov. 6, 2013) (notice of availability of final EA).

This new 2013 permit ("2013 anchored permit") is effective from October 25, 2013, through October 24, 2014, and was issued more than two years after NMFS made its final decision to issue the 2011 towed permit. 78 Fed. Reg. at 66,683.  As part of the permitting process, KBWF was also required to obtain from the Department of the Army a permit from the U.S. Army Corps for the proposed mooring of the pen.  78 Fed. Reg. at 49,259.  Plaintiffs have not filed any lawsuit challenging final decisions by NMFS or the Corps of Engineers to approve the 2013 anchored permits.

## ARGUMENT

**I.      Plaintiffs' motion for leave should be denied because Plaintiffs have not shown good cause for modifying the scheduling order for summary judgment motions to allow Plaintiffs to file a fourth motion for summary judgment.**

Plaintiffs seek leave to file a renewed motion for summary judgment so that they may submit supplemental briefing for their NEPA challenge to the terminated 2011 towed permit.  Their motion seeks to expand on issues already briefed in 2012 and to provide the Court with materials from the December 2013 anchored permit that was issued years after NMFS issued the 2011 permit and thus post-date the agency's administrative record.  <u>See</u> Mot. for Leave, ECF No. 63 at 1 (contending that the 2013 anchored permit "provides an expanded factual record" that justifies supplemental briefing on the 2011 towed permit).

---

[1] KBWF has reincorporated under the name Kampachi Farms, LLC, hereinafter referred to by its original name, KBWF.

As an initial matter, Plaintiffs' request should be denied because they have already had a full opportunity to brief the merits of their NEPA claim.  Plaintiffs now attempt to summarize this fulsome, prior merits briefing as based solely on whether NMFS knew there would be future permit applications, but this statement does not accurately characterize the NEPA briefing already before the Court.  <u>See</u> Mot. for Leave at 2 (characterizing Federal Defendants' response to the NEPA arguments); <u>but see</u> Pls.' Mot. for Summ. J. at 21-28; Defs.' Cross-MSJ, ECF No. 32-1 at 17-22; Pls.' Opp & Reply, ECF No. 35 at 12-15; Defs.' Reply, ECF No. 38 at 13-15.  However, a review of the actual NEPA merits briefing shows that Plaintiffs mischaracterize the briefing on file, which addresses squarely Plaintiffs' many NEPA-related arguments.

Plaintiffs have thus not shown good cause for adjusting the scheduling order in this case so that they can file a renewed motion for summary judgment.  <u>Cf. Ho-Chuan Chen v. Dougherty</u>, C04-987MJP, 2007 WL 1461205 (W.D. Wash. May 16, 2007) (after Ninth Circuit remanded and provided for renewed motions for summary judgment to address intervening Supreme Court caselaw, district court denied party's motion to set new discovery or expert report deadlines because it found no good cause).  In this case, the Ninth Circuit did not suggest that any further briefing was necessary.

Plaintiffs seek a second bite at the apple—proposing to file for the Court a renewed motion for summary judgment that adds discussion of caselaw available in 2012 and new citations to the 2011 EA, which was already in the administrative record on file.[2]  <u>See</u> Pls.' Proposed Renewed Mot. for Summ. J., ECF No. 63-10, at

---

[2] Plaintiffs also seek to rely on materials not cited in their initial motion for summary judgment, which is not permitted by the local rules.  <u>See</u> LR56.1(f) ("Scope of Judicial Review. When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.

12-15.  For example, Plaintiffs contend that they must further address whether the 2011 towed permit sets a precedent for further permits.  See id. at 11-15.  Plaintiffs already raised these arguments.  See Pls.' Mot. for Summ. J. at 26-27.  Further, as discussed infra, Plaintiffs' proposed renewed motion relies on extra-record, post-decisional information that is not properly part of the administrative record for this litigation, as discussed further below.  Id. at 16.  Plaintiffs' request to augment their briefing with expanded legal argument of issues that have already been presented to the court and with references to extra-record post-decisional materials should be rejected.  Plaintiffs have not shown due diligence in their need to modify the scheduling order to justify allowing further summary judgment briefing.  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (explaining the "good cause" standard and that "[a] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril'") (citation omitted).  For those reasons alone, Plaintiffs' motion for leave should be denied.

## II.  Plaintiffs' motion for leave should be denied because the Court already addressed Plaintiffs' arguments regarding the effect of the 2011 permit, and remedy briefing is premature.

Plaintiffs also argue that further summary judgment briefing is necessary to address several arguments Plaintiffs could have made in their Second Amended Motion for Summary Judgment, filed in 2012.  Mot. for Leave at 8-10.  Again they have not shown "good cause" to amend the scheduling order to reopen summary judgment briefing.

Plaintiffs contend, for example, that they did not have a full opportunity to brief the precedent-setting impact of the 2011 towed permit.  See Mot. for Leave at

Further, the court shall have no independent duty to review exhibits in their entirety, but rather will review only those portions of the exhibits specifically identified in the concise statements.").

1   8-9 (opining that "the precedent of issuing KBWF a permit under the MSA means

2   that future decisionmakers will not have much of a choice but to proceed by

3   issuing Special Permits to aquaculture facilities under the MSA").[3]  But Plaintiffs

4   have, and Federal Defendants responded, thus there is no need to reargue these

5   claims now.  See, e.g., Pls.' Mot. for Summ. J. at 26-27; Defs.' Cross-MSJ at 21;

6   Pls.' Opp. & Reply at 15; Defs.' Reply at 15.  Moreover, the mere fact that NMFS

7   approved the applicant's 2013 permit application at a remote future date in no way

8   suggests that the 2011 permit established a precedent for "the thoughtless setting in

9   motion of a chain of bureacratic commitment that will become progressively

10  harder to undo the longer it continues."  Presidio Golf Club v. Nat'l Park Service,

11  155 F.3d 1153, 1162 (9th Cir. 1998) (citation omitted).  Importantly, both projects

12  are stand-alone projects that could have taken place without each other, each had

13  independent utility, and each was subject to independent NEPA review.[4]  See

14  Native Ecosystems Council v. Dombeck, 304 F.3d 886, 894 (9th Cir. 2002).

15

16  [3] See also Mot. for Leave at 14 (contending based on Plaintiffs' own speculation that there is a "possibility" that the 2013 anchored permit was approved by NMFS because KBWF's success securing the 2011 towed permit).

17

18  [4] Indeed, Plaintiffs have pointed to nothing in the record that supports their dire prediction regarding the project's precedential effects.  The 2011 EA's Purpose and Need statement clearly anticipates the limited scope of the project, which is to "demonstrate the *feasibility* of conducting fish culture in cages in Federal waters around Hawaii."  AR A at 9 (emphasis added).  Moreover, the Finding of No Significant Impact specifically concludes that the action will not establish a precedent for approval of future actions having significant effects, to wit:

19

20

21

22

23          The approved Hawaii FEP and NMFS regulation specifically provide
            for the rare circumstance where, as here, an applicant demonstrating
24          the requisite experience may request the use of an unapproved gear
            type to harvest MUS.  Each such application must undergo
25          environmental review and coordination, and approval is by no means
            assured.  The current application is a one-time permit limited in both
26          scope and duration (EA, section 5.1.1).  There is no reason to
            conclude that approval of the current permit would have a cumulative
27

28

Moreover, this Court already held that NMFS is not required to grant every permit that comes before it, whether or not it constitutes "aquaculture," as Plaintiffs claim:

> Even if KBWF's activities do constitute aquaculture, the issuance of the permit does not mean that every application the NMFS receives requesting a permit to conduct aquaculture will be granted so long as the application meets other permitting requirements. If the NMFS receives a SCREFP application seeking to conduct aquaculture, the NMFS will have to look at the specific activities proposed and determine whether those actions involve "the catching, taking, or harvesting of fish." 16 U.S.C. § 1802(16). Calling an activity "aquaculture" will not be enough.

Order, ECF No. 46 at 27-28.[5]

Plaintiffs next contend that further briefing is needed on "the forms of adequate relief." Mot. for Leave at 10-11. This request again is premature and misplaced. The Court has not found a NEPA violation. If it does, Federal Defendants will certainly be prepared to brief the scope of appropriate relief should the Court request it. Absent any finding of violation, there is no need for a

---

effect of speeding up the approval of larger-scale projects. Each application would need to be coordinated in accordance with the permit process, and would need to comply with all applicable laws including project-specific environmental review.

AR A at 9; AR A at 17.

[5] As the Court understood, under 50 C.F.R. § 665.224, each permit application is subject to its own environmental review, comment period, and review by the Council, the state, and interested parties. NOAA's Regional Administrator may approve or deny the special permit after considering several factors. Id. at 665.224(d)(3)(ii); see Defs.' Reply at 15 ("NMFS was clear that any future permit applications were not guaranteed to be approved. AR A at 46."). There is no "chain of bureaucratic commitment" from one permit to the next, as Plaintiffs assert. Cf. Pls.' Mot. for Summ. J. at 26 (making this argument in 2012).

renewed motion for summary judgment to address arguments that were not raised in the initial summary judgment briefing and that are not yet before the Court.[6]

**III.   Plaintiffs seek to file a renewed motion based on material outside the administrative record in this litigation.**

Plaintiffs contend that "[a]dditional briefing is also needed because of the expanded factual record that exists because of Defendants' approval of a Special Permit for the Velella II facility [i.e., the 2013 anchored permit]."  Mot. for Leave at 10; see id. at 10-16; see also id. at 5 (stating that the record supporting the approval of the 2013 permit is "relevant and admissible" for the remaining NEPA claim).  Similarly, a significant portion of Plaintiffs' proposed renewed motion for summary judgment urges the Court to consider documents from the 2013 permit approval and NEPA processes—the remainder rehashes old arguments using old caselaw.  See Pls.' Proposed Renewed Mot. for Summ. J., at 5-7 (discussing post-decisional article related to 2013 anchored permit); 7-9 (discussing 2013 EA); 17-18 (discussing cumulative impacts by relying on the 2013 EA); 18-21 (discussing the controversial nature of the 2011 permit by reciting arguments from Plaintiffs' Mot. for Summ. J. at 24, and the 2013 EA); 21-22 (discussing the 2013 EA).

However, Plaintiffs are wrong that there is an expanded factual record in this

---

[6] Plaintiffs now seek the sweeping remedy of an injunction against any further special permits for the propagation of rearing of aquatic organisms or harvesting of such organisms until NMFS issues an EIS that evaluates such impacts.  See Pls.' Proposed Renewed Mot. for Summ. J. at 2, 23; cf. Compl. at 27-28 (seeking only a declaration that the 2011 permit is unlawful and an injunction suspending, rescinding, or revoking that permit and any further relief "that the Court deems just and proper").  Should the Court find a NEPA violation, Federal Defendants respectfully request the opportunity to present further briefing on remedy to demonstrate why this sweeping injunction is too broad.  See, e.g., Monsanto Co. v. Geertson Seed Farms, 561 U.S.139, 130 S. Ct. 2743 (2010) (vacating nationwide injunction when partial or complete vacatur of the decision at issue would have been sufficient).

1    case.   The scope of judicial review in this litigation is prescribed by the

2    Administrative Procedure Act ("APA").   See Native Ecosystems Council v. U.S.

3    Forest Serv., 428 F.3d 1233, 1238 (9th Cir. 2005).   As such, the scope of the

4    Court's review is limited to the administrative record.   See 5 U.S.C. § 706; see

5    Camp v. Pitts, 411 U.S. 138, 142 (1973)(holding that under the APA "the focal

6    point for judicial review should be the administrative record already in existence,

7    not some new record made initially in the reviewing court."); Ranchers Cattlemen

8    Action Legal Fund v. U.S. Dep't of Agric., 499 F.3d 1108, 1114 (9th Cir. 2007)

9    ("[T]his court has reviewed the administrative record for the purpose of the

10   injunction, and, with some narrow exceptions, neither we nor the district court may

11   consider any other evidence.").   The administrative record for this litigation is

12   comprised of the information that was before NMFS at the time NMFS made its

13   July 2011 decision regarding the towed permit.   Ctr. for Biological Diversity v.

14   U.S. Fish & Wildlife Serv., 450 F.3d 930, 943 (9th Cir. 2006).

15        Plaintiffs admit that "Plaintiff [sic] has not challenged the issuance of this

16   [2013] permit."  Mot. for Leave at 5.[7]  Plaintiffs do not, and cannot claim that the

17   Ninth Circuit expanded the scope of review to include the decision to approve the

18   2013 permit, an entirely separate agency action.  The Ninth Circuit did not address

19   the merits of Plaintiffs' NEPA claim or suggest that any subsequent permit is

20   relevant to the merits of Plaintiffs' NEPA claim—the Ninth Circuit only explained

21   that the potential for another permit application meant that the NEPA claim met an

---

[7] Nor could Plaintiffs have brought a challenge to the 2013 anchored permit via their proposed renewed motion for summary judgment. "'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'" Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (citation omitted); Navajo Nation v. United States Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc) ("Where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").

1    exception to the mootness doctrine.  9th Cir. Op., ECF No. 55 at 3. The Ninth

2    Circuit affirmed the district court's holdings that granted Federal Defendants'

3    motion for summary judgment as to the Magnuson-Stevens Act and Administrative

4    Procedure Act claims.  See id. at 1-2.  Thus, the only remaining claim before the

5    District Court is the NEPA claim challenging the 2011 towed permit and the

6    administrative record that is the basis for the Court's review of that permit is

7    therefore comprised of the materials relevant to NMFS' 2011 permit.  Materials

8    like the 2013 permit decision and EA are extra-record because they did not even

9    exist and could not have been before NMFS at the time of its decision.[8]

10       The Ninth Circuit recognizes four limited exceptions to the record review

11   rule: extra-record materials may be considered: (1) if necessary to determine

12   whether the agency has considered all relevant factors and has explained its

13   decision; (2) when the agency has relied on documents not in the administrative

14   record; (3) when supplementing the record is necessary to explain technical terms

15   or complex subject matter; or (4) when plaintiffs make a showing of agency bad

16   faith.  Southwest Center for Biological Diversity v U.S. Forest Service, 100 F.3d

17   1443, 1450 (9th Cir. 1996).  The party submitting extra-record evidence bears the

18   burden   of   demonstrating   with   particularity   how   its   request   for   record

19   supplementation falls within one of these exceptions. See Animal Def. Council v.

20   Hodel, 840 F.2d 1432, 1438 (9th Cir. 1988) (holding that "the district court

21

22   [8] Moreover, even if Plaintiffs' request was not improper because it ignores decades of precedent on the proper scope of judicial review, Plaintiffs did not even follow proper procedures for putting additional materials before the Court.  Instead, they

23   simply attached extra-record documents to their motion for leave and cited them in their proposed renewed motion for summary judgment, without seeking

24   supplementation of the administrative record by the Federal Defendants. Plaintiffs' motion for leave to consider extra-record information outside the

25   administrative record should be denied.  Moreover, arguments that impermissibly rely on extra record information should be stricken.  Rybachek v. EPA, 904 F.2d

26   1276, 1296 n.25 (9th Cir. 1990) (granting motion to strike portions of petitioners' brief that includes and relies on extra-record material); see also Trans-Sterling, Inc.

27   v. Bible, 804 F.2d 525, 528 (9th Cir. 1986) (motion to enlarge the record on appeal with subsequent newspaper article was denied as inappropriate).

28

1 properly limited review to the administrative record" because the plaintiff "has not

2 demonstrated that it falls within any of the exceptions to the general rule that

3 review of agency action is limited to the administrative record"). Plaintiffs have

4 not provided any proper basis to carry their burden for supplementing the

5 administrative record.

6 But, more fundamentally, none of these exceptions are relevant here because

7 they apply only to materials that were in existence <u>at the time</u> the agency made its

8 decision and do not include post-decisional information. <u>Tri-Valley CARES v.</u>

9 <u>U.S. Dept. of Energy</u>, 671 F.3d 1113, 1130-31 (9th Cir 2012). Because Plaintiffs

10 submit post-decisional information related to the 2013 permit, none of their

11 materials may be allowed under the record exceptions. <u>See, e.g.</u>, <u>Klamath Siskiyou</u>

12 <u>Wildlands Ctr. v. Bureau of Land Mgmt.</u>, 1:12-CV-1558-CL, 2014 WL 525116 (D.

13 Or. Feb. 6, 2014) (granting Federal Defendants' motion to strike an EA for another

14 project submitted to the court as extra-record information because the EA was

15 post-decisional).

16 Additionally, even if Plaintiffs' extra-record materials were not all post-

17 decisional, which they clearly are, neither of the two record-review exceptions

18 Plaintiffs cite is sufficient to allow consideration of these extra-record materials.

19 Plaintiffs claim in a footnote that the 2013 materials are necessary to determine

20 whether the agency has considered all relevant factors and because they have

21 shown "bad faith" (exceptions 1 and 4). <u>See</u> Mot. for Leave at 12 n.3.

22 Assuming <u>arguendo</u> that Plaintiffs' extra-record materials were not all post-

23 decisional such that the record-review exceptions do not apply in the first instance,

24 Plaintiffs do not show that the 2013 anchored permit materials and argument based

25 on them should be considered under either exception one or four. As to exception

26 one, Plaintiffs must demonstrate that the administrative record wholly fails to

27

28

explain agency action such that the administrative record "effectively frustrates judicial review." Animal Def. Council, 840 F.2d at 1436.[9]  Thus, unless the administrative record is so bare that it prevents effective judicial review, courts decide the merits of a plaintiff's claims based solely on the administrative record the agency submits.  Camp v. Pitts, 411 U.S. at 142-143.[10]  Plaintiffs have not explained why the existing administrative record, which spans over 5,300 pages, is insufficient for the Court's review of the NEPA claim.  Cf. Mot. for Leave at 12 n.3.  Instead they cite caselaw that stands for the unremarkable proposition that, if later investigation shows that facts assumed to be true are later false based on evidence that predated the decision, consideration of extra-record information may be appropriate.  See Afghan Am. Army Servs. Corp. v. United States, 106 Fed. Cl. 714, 724-25 (Fed. Cl. 2012) (admitting results of later investigation into fraud allegations where the deciding officer assumed the truth of unsubstantiated allegations) (Mot. for Leave at 12 n.3).

Here, the information Plaintiffs seek to introduce was not available to NMFS at the time it made its decision—nor could it have been.  Plaintiffs argue, based on the fact that a second permit application was submitted two years later, that NMFS

---

[9] And, when judicial review is frustrated by an insufficient record, the appropriate recourse is for the Court to "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." Animal Def. Council, 840 F.2d at 1436 (citations omitted), not to allow the plaintiffs to submit extra-record, post-decisional information, without leave.

[10] Plaintiffs suggest that there is a corollary to the first exception when the agency "proceeded upon assumptions that were entirely fictional or utterly without scientific support." Mot. for Leave at 12 n.3 (citing cases).  The Ninth Circuit later clarified that there are still only four limited exceptions to record review and that post-decisional evidence cannot be used to question the agency's predictions at the time they were made. See Ranchers Cattlemen, 499 F.3d at 1117 (considering the "entirely fictional" caselaw and concluding that "[u]nder [Ninth Circuit] principles, [the plaintiffs'] arguments can only carry the day if they show flaws in the [agency's] approach, rather than in its predictions."); see also Tri-Valley CARES, 671 F.3d at 1130-31 (the four exceptions do not apply to post-decisional information).

should have known, when it approved the 2011 towed permit, when and if a later application would be submitted and whether the proposed activity would be similar to the action proposed in 2011.  Federal Defendants already explained in summary judgment briefing that, when the 2011 towed permit was approved, NMFS could not have predicted with any reasonable certainty whether a new permit application would be submitted, what it would look like, and until it completed its review process, whether NMFS would approve any future permit application.  See Fed. Defs.' Reply at 15.[11]

Plaintiffs' explanation for including the post-decisional records reflects a fundamental misunderstanding of what future projects NEPA requires an agency to analyze at the time of its decision.  "[NEPA] speaks solely in terms of proposed actions; it does not require an agency to consider the possible environmental impacts of less imminent actions when preparing the impact statement on proposed actions."  Kleppe v. Sierra Club, 427 U.S. 390, 410 n. 20 (1976).[12]  Moreover, under a cumulative impacts analysis, NMFS was only required to analyze the 2011 permit together with "reasonably foreseeable future actions."  40 C.F.R. § 1508.7. Nothing in NEPA requires the agency to analyze the speculative impacts of imagined future proposals.  Jones v. NMFS, 741 F.3d 989, 1000 (9th Cir. 2013) ("[f]or any project that is not yet proposed, and is more remote in time… a

---

[11] And, of course, the 2013 permit proposed a different activity than the 2011 and also involves permits from another government agency entirely, the U.S. Army Corps of Engineers.

[12] Even assuming that the 2011 and 2013 permit decisions were closely related, which they were not, the agency was not required to analyze them together as part of the 2011 permit decision until the 2013 permit had become sufficiently definite as to constitute a "proposal," defined by CEQ regulations to mean "that stage in development of an action when an agency subject to the Act has a goal and is actively preparing to make a decision on one or more alternative means of accomplishing that goal and the effects can be meaningfully evaluated."  40 C.F.R. § 1508.23; see California v. Block, 690 F.2d 753, 761 (9th Cir. 1982) (detailed analysis under NEPA required when "a concrete development proposal crystallizes the dimensions of a project's probable environmental consequences")

1   cumulative effects analysis would be both speculative and premature") (citation

2   omitted).

3       This is unlike <u>Afghan American Army Services.</u>, where the extra-record

4   information was based on information that could have been available to the

5   deciding officer if the officer had probed further—not unknown, speculative future

6   events.   Plaintiffs have not shown that the Court is unable to review NMFS'

7   decision based on the record before it at the time of decision-making.

8   Furthermore, it is notable that Plaintiffs made no argument that the administrative

9   record was insufficient in 2012 when they filed a motion for summary judgment,

10  seeking the Court's review of its NEPA claim on the basis of the existing record.

11  Thus, Plaintiffs' materials do not meet the exception and they are post-decisional.

12      Likewise, Plaintiffs' allegations in support of exception four, based on "bad

13  faith," are unfounded because they have not shown with particularity that Federal

14  Defendants assumed that there would be no future projects—indeed, NMFS

15  explained that it did not know if any future projects would be similar (just as

16  NMFS did not know when it approved the permit in 2011 if the permittee would

17  submit any further permit applications).   Defs.' Reply at 15.   Plaintiffs have not

18  identified any information in the record indicating that NMFS was, or should have

19  been, aware of a <u>specific, concrete, proposal</u> for a subsequent permit.

20      And even if Federal Defendants had wrongly assumed in 2011 that there

21  would be no future permit applications, which they did not, a wrong assumption

22  later disproven is not evidence of bad faith.   <u>See, e.g.,</u> <u>Bark v. Northrop</u>, -- F.Supp.

23  2d --, No. 3:13-CV-00828-AA, 2014 WL 715603, at *4 (D. Or. Feb. 23, 2014)

24  (rejecting claim of "bad faith" where the plaintiffs had not adequately justified it);

25  <u>see also</u> <u>Fence Creek Cattle Co. v. U.S. Forest Serv.</u>, 602 F.3d 1125, 1131 (9th Cir.

26  2010) (rejecting suggestion of bad faith where the plaintiff had not shown that

27  review of other grazing permits would show bad faith as to the permit at issue).

28  Thus, to the extent Plaintiffs' footnote can be construed as an argument in support

1   of exception four, it must be rejected both because Plaintiffs' materials are wholly

2   post-decisional and because, even if they were not, they do not meet the exception.

3       In sum, it is clear that Plaintiffs cannot properly invoke any of the

4   exceptions to record review and are instead impermissibly using this extra-record

5   information to challenge the merits of NMFS' 2011 permit decision.  For example,

6   in arguing that the 2013 EA should have discussed an "EFP alternative," Plaintiffs

7   appear to be arguing again that the 2011 towed permit approval set a precedent for

8   the 2013 anchored permit.  Mot. for Leave at 12 n.3.  Plaintiffs are again rearguing

9   old points: they already raised the precedential impact of the 2011 permit when

10  they briefed summary judgment in 2012.  And, as discussed supra, Plaintiffs have

11  no support for their claim that NMFS is bound by prior permit actions when it

12  considers a subsequent permit application.  Plaintiffs also contend that the extra-

13  record information is helpful to understanding whether the agency understood in

14  2011 that there would be "growth-inducing" or FAD impacts from granting the

15  first permit.  See Mot. for Leave at 13-16.  Again, these arguments were already

16  raised in summary judgment.  See Pls.' Mot. for Summ. J. at 24, 26-27.  Thus,

17  Plaintiffs are simply attempting to improperly bolster their arguments with

18  information that was not available to the agency at the time it made its challenged

19  decision.

20      "[I]t is not 'appropriate ... for either party to use post-decision information as

21  a new rationalization either for sustaining or attacking the Agency's decision.'"

22  Rybachek v. EPA, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (quoting Ass'n of Pac.

23  Fisheries v. EPA, 615 F.2d 794, 811-12 (9th Cir. 1980)).  As a practical matter,

24  such a practice would turn judicial review into an extension of the agency's effort

25  to compile a record, and would make the court the initial fact finder on issues to

26  which such post-decision materials are relevant.  Such a proceeding would exceed

27  the Court's jurisdiction under the APA.  See, e.g., Kappos v. Hyatt, 132 S.Ct.

28  1690, 1696 (2012) ("Under the APA, judicial review of an agency decision is

1  typically limited to the administrative record."); <u>San Joaquin River Grp. Auth. v.</u>

2  <u>NMFS</u>, 819 F. Supp. 2d 1077, 1083-84 (E.D. Cal. 2011) (a "court conducting APA

3  judicial review may not resolve factual questions, but instead determines 'whether

4  or not as a matter of law the evidence in the administrative record permitted the

5  agency to make the decision it did.'") (citations omitted); <u>see also Asarco, Inc. v.</u>

6  <u>EPA</u>, 616 F.2d 1153, 1160 (9th Cir. 1980) (extra-record evidence "to determine the

7  correctness or wisdom of the agency's decision is not permitted"); <u>Nw. Envtl. Def.</u>

8  <u>Ctr. v. U.S. Army Corps of Eng'rs</u>, 817 F. Supp. 2d 1290, 1300 (D. Or. 2011)

9  (declaration inadmissible in part because it "improperly provide[d] . . .

10  'interpretation, opinion and argument of what ultimate conclusions the Record can

11  and cannot support'") (citation omitted).

12       Thus, because the 2013 anchored permit, its EA, and extra-record materials

13  are not part of the administrative record for this litigation, and because Plaintiffs

14  have failed to meet their burden of demonstrating why supplementation should be

15  allowed, Plaintiffs' motion for leave should be denied, and the extra-record

16  materials and arguments should be stricken.  Plaintiffs cannot justify a renewed

17  motion for summary judgment on the basis of a hoped-for expanded factual record

18  that consists entirely of post-decisional records.  Mot. for Leave at 6, 10 (citing

19  <u>Hoffman v. Tonnemacher</u>, 593 F.3d 908, 910-12 (9th Cir. 2010) (non-APA case

20  where the court allowed successive summary judgment motion based on new

21  expert witness evidence).[13]

22       Finally, there are important administrative principles underpinning the rule

23  that post-decisional information should not be considered by the Court.  Plaintiffs

24

25  [13] Moreover, the <u>Hoffman</u> court acknowledged that allowing successive motions

26  for summary judgment in some instances may be appropriate, but explained that "we are conscious of the potential for abuse of the procedure and reiterate here that district courts retain discretion to 'weed out frivolous or simply repetitive

27  motions.'"  593 F.3d at 911 (citation omitted).  Plaintiffs' renewed motion for summary judgment is such a motion.

28

cite <u>Airport Communities Coalition v. Graves</u> as allowing consideration of new information that post-dated the agency's decision.  <u>See</u> Mot. for Leave at 12 n.3. In fact, that court did not allow any extra-record information because:

> Here, the extra-record information represents new information that was not available at the time the Corps made its decision. If the information had been available within that time frame, the court could then use that information to determine whether the Corps acted arbitrarily and capriciously in not considering that information as a relevant factor. Likewise, if the new information revealed that the information in the record was wrong at the time that it was put in the record and considered by the Corps, then the evidence would be admissible

280 F. Supp. 2d 1207, 1213 (W.D. Wash. 2003). The <u>Airport Communities</u> court admonished the plaintiff for "Monday morning quarterbacking," holding "[i]f the court were to consider this new information in an arbitrary and capricious analysis, the court would effectively transform that analysis into <u>de novo</u> review, a level of review for which this court is not authorized." <u>Id.</u>  Likewise, what Plaintiffs now put before the Court in this case is not information that showed that NMFS' understanding of the environmental impacts of the 2011 towed permit were incorrect when the agency made the decision, but instead, Plaintiffs  criticize the 2011 permit decision based on a 2013 project proposal that was not known, and documents that did not exist.

Because there is no expanded factual record for Plaintiffs' NEPA challenge to the 2011 permit decision, and because Plaintiffs' proposed renewed motion for summary judgment impermissibly relies on extra-record information that is not properly considered in reviewing Plaintiffs' NEPA claim, Plaintiffs' motion for leave must be denied.

## CONCLUSION

For the reasons discussed above, the Court should deny Plaintiffs' motion for leave, ECF No. 63, and decide this case on the merits of the NEPA briefing already before the Court.

1  Dated: March 18, 2014                    Respectfully Submitted,

2

3                                           FLORENCE T. NAKAKUNI
                                            United States Attorney
4                                           District of Hawaii

5
                                            ROBERT G. DREHER,
6                                           Acting Assistant Attorney General
                                            SETH M. BARSKY, Chief
7                                           KRISTEN L. GUSTAFSON,
8                                           Assistant Chief

9
                                            /s/ *Rickey D. Turner, Jr.*
10                                          RICKEY D. TURNER, JR.
                                            Trial Attorney, CO Bar 38353
11                                          U.S. Department of Justice
12                                          Environment & Natural Res. Division
                                            Wildlife & Marine Resources Section
13                                          999 18th Street
14                                          Suite 370 - South Terrace
                                            Denver, CO 80202
15                                          Ph: (303) 844-1373
16                                          Email: rickey.turner@usdoj.gov

17                                          Attorneys for Federal Defendants

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF HAWAII

| | |
|---|---|
| KAHEA and FOOD & WATER WATCH, INC., | CASE NO. 1:11-cv-474-SOM-KSC |
| Plaintiffs, | **CERTIFICATE OF SERVICE** |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE; MICHAEL D. TOSATTO, in his official capacity as Regional Administrator of the National Marine Fisheries Service, Pacific Islands Regional Office; ERIC C. SCHWAAB, in his official capacity as Assistant Administrator of the National Marine Fisheries Service; and GARY LOCKE, in his official capacity as Secretary of Commerce, | |
| Defendants. | |

I hereby certify that today I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that a true and correct copy of the foregoing document was sent via U.S. mail to the following:

David Lawton
GALLAGHER & GALLAGHER
1925 Century Park East, Suite 950
Los Angeles, CA 90067

*/s/ Rickey D. Turner, Jr.*
RICKEY D. TURNER, JR.

CoS

11-cv-474-SOM-KSC